UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MONIB ZIRVI, M.D., PH.D** ) <br> ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **UNITED STATES NATIONAL INSTITUTES** ) <br> **OF HEALTH, UNITED STATES NATIONAL** ) <br> **INSTITUTES OF STANDARDS AND** ) <br> **TECHNOLOGY, and UNITED STATES** ) <br> **PATENT AND TRADEMARK OFFICE** ) <br> ) <br> **Defendants.** ) | Civ. No.: _____ <br><br> Hon. _____ U.S.D.J. <br> Hon. _____ U.S.M.J. |

**FREEDOM OF INFORMATION ACT COMPLAINT**

Plaintiff Monib Zirvi, MD Ph.D., by and through by his undersigned attorneys, hereby brings this Freedom of Information Act Complaint and avers as follows:

### 1. INTRODUCTION

This is an action brought under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), to compel the production of agency records from the National Institutes of Health ("NIH"), the National Institute of Standards and Technology ("NIST") and the United States Patent and Trademark Office ("USPTO") in response to the requests properly made herein by Dr. Zirvi.

### II. PARTIES

1.  Plaintiff Dr. Zirvi is a qualified medical specialist and a citizen of the State of New Jersey, residing at 19 Major Road, Monmouth Junction, New Jersey.

2.  Defendant NIH is an agency of the federal government located at 9000 Rockville Pike, Bethesda, Maryland, which, among its many functions, regulates the activities of health and

medical science research including, but not limited to, grant funding to universities and commercial entities via both basic science grants and commercial Small Business Innovation Research grants. The NIH has custody and control of the records that the Plaintiff seeks. (Exs. 2, 3).

3. Defendant NIST is an agency of the federal government located at 100 Bureau Drive, Gaithersburg, Maryland. Among its many functions, it regulates the activities of various technological companies and maintains standards. Its activities include grant funding to both universities and commercial entities via both basic science grants and commercial grants. The NIST is in possession and control of the 415 pages of records in 23 documents involving NIST ATP Grant 70NANAB5h1031 that the Plaintiff seeks. (Ex. 5).

4. Defendant USPTO is an agency of the federal government located at 600 Dulany Street, Alexandria, Virginia, which, among its many functions, examines, maintains and oversees patent applications and issued patents to individual inventors and various organizations including universities and commercial entities. The USPTO is in possession and control of the following documents from IPR2016-00557 (Illumina, Inc. v. Barany, et. al.) Documents 42-52 and Documents 2051 and 2052 that the Plaintiff seeks. (Ex. 4). Document 2052, in particular, is a settlement agreement signed in April 2017 in the matter of *Cornell University v. Illumina, Inc.* in the United States District Court for the District of Delaware (1:10-cv-00433-LPS-MPT) (the "Illumina Action"),

### III. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

6. Venue is premised on the place of residence of the Dr. Zirvi and is proper in this

District under 5 U.S.C. § 552(a)(4)(B).

7. Dr. Zirvi has exhausted all prior administrative remedies available in respect of the requests at issue.

## IV. FACTUAL BACKGROUND

8. Dr. Zirvi is a co-inventor on International Patent Application WO97/31256, which played a critical role in the development of DNA Arrays known as Universal "Zip Code" Arrays, or Universal DNA Arrays. These arrays are "programmable" and depend on specially designed solid and solution phase oligonucleotides, which Dr. Zirvi and co-inventors named as "Zip Code Sequences". These "Zip Code Sequences" are the basis for revolutionary advances in the detection of changes in DNA. The detection of such changes is critical for the prompt diagnosis and targeted treatment of cancer, inherited genetic defects, and viral infections.

9. Illumina is a monopolist in the market for DNA sequencing that has improperly used intellectual property strategies, including by usurping the intellectual property of Dr. Zirvi and others, and collusive partnership agreements with competitors to maintain its monopoly power in the DNA sequencing market. (Ex. 1).

10. Plaintiff seeks documents reflecting and/or concerning efforts by Illumina to improperly maintain its monopoly power. The documents include any partnership agreements between Illumina and Thermo Fisher – which together control over 90% of the U.S. markets in DNA sequencing and DNA arrays – that are contrary to the law and against the public interest. The documents requested include (i) information relating to a fraudulently induced settlement agreement, signed in April 2017 to resolve the Illumina Action, concerning International Patent Application WO97/31256 and others, (ii) federal grants obtained using the intellectual property of Dr. Zirvi and others, and (iii) other anticompetitive conduct of Illumina.

11. When Cornell University and Dr. Zirvi fought back against Illumina's conduct, Illumina conspired with Thermo Fisher to fraudulently induce Cornell to settle its claims in the Illumina Action, over the objections of Dr. Zirvi and the other co-inventors of WO97/31256 and the other intellectual property in that case.

12. Illumina's unlawful and anticompetitive agreements and actions are of significant public interest because those actions permit Illumina to maintain its monopoly control over the DNA sequencing market.

### A. **Dr. Zirvi's FOIA Requests**

13. To uncover information evidencing collusion between Illumina and Thermo Fisher, Dr. Zirvi filed a series of FOIA requests in 2017 and 2018.

14. On or about May 17, 2017, Dr. Zirvi submitted a FOIA request to the NIH's National Cancer Institute ("NCI"). The FOIA request sought copies of grant applications and progress reports that Illumina filed with the NCI. (Ex. 2).

15. On or about May 17, 2017, Dr. Zirvi submitted a FOIA request to the NIH's National Human Genome Research Institute ("NHGRI"). The FOIA request sought copies of grant applications and progress reports that Illumina filed with the NHGRI. (Ex. 3).

16. On or about November 23, 2019, Dr. Zirvi submitted a FOIA request to the NIH for all emails and letter correspondence sent to or received by Illumina/Illumina officials from January 1, 2017 to November, 2019, regarding Illumina's unprecedented donation of millions of dollars of equipment and genotyping arrays to the NIH "All of Us" Research Program. (Ex. 24).

17. On or about May 22, 2018, Dr. Zirvi submitted a FOIA request to the USPTO for a copy of the following documents from IPR2016-00557 (Illumina, Inc. v. Barany, et. al.) Documents 42-52 and Documents 2051 and 2052, as filed on the following dates: March 29, 2017,

April 12, 2017, April 20, 2017, May 26, 2017.  See FOIA Request No. F-18-00196.  (Ex. 4).  His requests to the USPTO include the settlement agreement in the Illumina Action.

18. On or about May 10, 2018, Dr. Zirvi submitted a FOIA request to the NIST for NIST ATP Grant 70NANB5H103.  NIST awarded this grant in 1994 jointly to Affymetrix (now Thermo Fisher) and Molecular Dynamics, whose then-CEO was Jay Flatley (later CEO of Illumina).  (Ex. 5).  This grant was a 5-year ATP grant that awarded $31.5 million of funding to Affymetrix and Molecular Dynamics.  Dr. Zirvi requested copies of the entire grant application and all subsequent progress reports and renewals until 2000.

**B. Improper Denials and Redactions of Information under FOIA Exemptions and Exhaustion of Remedies**

i. NCI's response to Dr. Zirvi's May 17, 2017 FOIA Request

19. On June 14, 2017, the NCI provided its final response to Dr. Zirvi's FOIA request for documents related to Illumina's grant application 1R43CA097851-01.  The NCI produced 187 pages of documents.  Before producing the documents, the NCI consulted with Illumina as the grantee for "advice concerning patent rights and other confidential commercial or financial information."  The NCI acknowledged to Dr. Zirvi in its response that "the material we are furnishing reflects that advice."  (Ex. 2).

20. Upon information and belief, the grant application documents or redacted sections the NCI withheld from its response to Dr. Zirvi's FOIA request at Illumina's behest showed initial experiments using 16 Zip Code oligonucleotides on an array to prove to the NCI that the Universal Arrays (described in WO97/31256, and co-invented by Dr. Zirvi years earlier) actually worked, thus assuring that the NCI would fund the grant.  (Ex. 17 at 66-68).

21. Upon information and belief, the grant application documents or redacted sections

the NCI withheld from its response to Dr. Zirvi's FOIA request at Illumina's behest contain information demonstrating that Illumina was secretly hiding that intellectual property, including negative and positive trade secrets developed in the Barany laboratory (including by Dr. Zirvi) was the basis for their grant applications and commercial success. (Ex. 22, see also Ex. 17 at 66-68). The undisclosed trade secrets include, but are not limited to, relative performance characteristics of various combinations of sequences, surfaces, and configurations. The majority of this data was never disclosed nor published.

22. Upon information and belief, the grant application documents or redacted sections the NCI withheld from its response to Dr. Zirvi's FOIA request at Illumina's behest contain material misappropriated from Dr. Zirvi. This is evidenced by the fact that 16 of the confidential Zip Code sequences created by Dr. Zirvi in February of 1999 fraudulently appeared as the *exact* same first 16 Zip Code sequences in Table 2 of Illumina's patent application US20030096239; K. Gunderson & M. Chee "Probes and Decoder Oligonucleotides", filed by Illumina over a year later on August 25th, 2000. (Ex. 23). In fact, the chances of *even one of these Zip Code sequences* matching exactly to Dr. Zirvi's work was one in 281 trillion.

23. Dr. Zirvi had agreed to allow salaries and names to be redacted, but the NCI allowed Illumina to redact key portions of the grants inappropriately, on information and belief, concealing fraud, in violation and abuse of 5 U.S.C. § 552.

24. The NCI also informed Dr. Zirvi that it would charge him as a commercial use requester. Pursuant to 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa), the NCI was required to inform Dr. Zirvi of his right to appeal the NCI's determination that he was a commercial use requestor to the head of the agency. As the NCI failed to inform Dr. Zirvi of his rights to appeal, Dr. Zirvi exhausted his administrative remedies.

      ii.    <u>NHGRI's response to Dr. Zirvi's May 17, 2017 FOIA Request</u>

25. On July 19, 2017, the NHGRI provided its final response to Dr. Zirvi's FOIA request for documents related to 1U54HG002753-01. The NHGRI produced 70 pages of documents. Before producing the documents, the NHGRI consulted with Illumina as the grantee for "advice concerning patent rights and other confidential commercial or financial information." The NCI acknowledged to Dr. Zirvi in its response that "the material we are furnishing reflects that advice." (Ex. 3).

26. The documents produced by the NHGRI in response to Dr. Zirvi's FOIA request contained significant redactions for purportedly "Proprietary Info." (Ex. 21).

27. Through the information provided in this FOIA request, Dr. Zirvi and his co-inventors learned that Illumina received over $15 million from the NIH to develop highly parallel SNP genotyping based on LDR-PCR and Universal DNA array with "Zip Code" technology that Dr. Zirvi had and his co-inventors had previously developed and patented while working at the Barany laboratory at Cornell University. (Ex. 17 at 69-71).

28. Since the material is over 17 years old, it is difficult to understand what would be proprietary, or suitable for a patent submission. Release of an un-redacted version of this application would reveal if Illumina inappropriately redacted one of more sections of these grants in a fraudulent effort to hide inculpatory evidence to deprive the true inventors of rightful royalties. (*Id.*)

29. Dr. Zirvi had agreed to allow salaries and names to be redacted, but the NHGRI allowed Illumina to redact key portions of the grants inappropriately, on information and belief, concealing fraud, in violation and abuse of 5 U.S.C. § 552.

30. Pursuant to 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa), the NHGRI was required to inform

Dr. Zirvi of his right to appeal the NHGRI's adverse determination of his FOIA request to the head of the agency. As the NHGRI's July 19, 2017 final response failed to inform Dr. Zirvi of his rights to appeal, Dr. Zirvi exhausted his administrative remedies. (Ex. 3).

  iii. <u>NIH Fails to Respond to Dr. Zirvi's November 23, 2019 FOIA Request</u>

  31. The NIH never responded to Dr. Zirvi's November 23, 2019 FOIA request seeking letter correspondence from or to Illumina/Illumina officials sent or received from January 1, 2017 to November 2019, regarding Illumina's donation to the NIH "All of Us" Research Program.

  32. The Illumina "donation" of genotyping arrays (which, as with all Illumina arrays, are derived from the intellectual property developed by Dr. Zirvi and co-inventors) was aimed to accelerate the "All of Us" research program. (Ex. 24).

  33. While the "All of Us" program would initially use the "donated" Illumina arrays to genotype 1 million individuals, the next phase of the project would be obtaining the entire genome sequence of these 1 million individuals, which would produce a windfall of hundreds of millions, if not over a billion dollars to Illumina, as a monopoly company controlling over 90% of the DNA sequencing market.

  34. To date, the NIH has failed to even respond to Dr. Zirvi's FOIA request. Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), because the NIH failed to respond to Dr. Zirvi's FOIA request within 20 days of the request, Dr. Zirvi has exhausted his administrative remedies.

  iv. <u>USPTO's Response to Dr. Zirvi's May 22, 2018 FOIA Request</u>

  35. On June 19, 2018, the USPTO produced 140 pages of releasable documents, including Documents 42-52 and Exhibit 2051. See Initial Determination (FOIA Request No. F-18-00196). The USPTO withheld Exhibit 2052 in full pursuant to Exemptions (b)(4) and (b)(5) of the FOIA which allows for the withholding of documents that contain trade secrets or inter-

agency or intra-agency memorandums. (Ex. 4). Exhibit 2052 contains the fraudulently induced settlement agreement between Thermo Fisher and Illumina in the Illumina Action, which denied the inventors of WO97/31256 any rightful royalties. Due to this fraud, the crime-fraud exception is applicable to this document which caused injury to Dr. Zirvi. It is also clearly in the public interest to expose fraud and corruption involving government research grant funding and fraudulent patent applications.

36. Dr. Zirvi appealed the USPTO's initial determination on July 2, 2018. Dr. Zirvi argued that Exhibit 2052 should be released because it is evidence of obstruction of justice in the Illumina Action. (Ex. 4).

37. In the USPTO's response denying Dr. Zirvi's appeal, the agency stated that disclosure of the terms of a settlement agreement resolving a commercial intellectual property dispute would cause substantial competitive harm to the persons who submitted the information because it would reveal their confidential legal, business, licensing, and litigation positions.

38. Here, the USPTO also provided notice to the parties to the settlement agreement that Exhibit 2052 was subject to a FOIA request. The parties have objected to its release and have confirmed that disclosure of Exhibit 2052 would cause them substantial competitive harm. Upon information and belief, this is further indication of both obstruction of justice and anti-trust behavior of the duopoly of Illumina and Thermo Fisher, which jointly control over 90% of the markets in DNA microarrays and DNA sequencing – it stretches the imagination that disclosure of settlement related documents "would likely cause substantial competitive harm" to these two industry leaders, unless such disclosure were to expose to the SEC, the Federal Trade Commission ("FTC"), the USPTO, the NIH, the NIST and US law enforcement agencies the substantial fraud, collusion, and irreparable harm allegedly perpetrated by the duopoly of Illumina and Thermo

Fisher on Cornell and the inventors of WO97/31256.

39. Pursuant to 5 U.S.C. § 552(a)(4)(B), Dr. Zirvi exhausted his administrative remedies in his FOIA request to the USPTO when on July 31, 2018 the USPTO provided its final decision in response to Dr. Zirvi's appeal. (Ex. 4).

    v.    <u>NIST's Response to May 10, 2018 FOIA Request for NIST ATP Grant 70NANB5H103</u>

40. On June 29, 2018, the NIST provided its final response to Dr. Zirvi's FOIA request. NIST conducted a search for responsive records and identified twenty-three (23) documents consisting of four hundred and fifteen (415) pages, which the agency stated fell within the category of Records to Be Withheld in their Entirely. Those documents are being withheld from disclosure pursuant to the following FOIA exemption 5 U.S.C. 552(b)(3) which allows for the withholding from disclosure of documents which contain trade secrets or intellectual property. (Ex. 5). The NIST ATP Grant was submitted to purportedly develop capillary electrophoresis of DNA on silicon chips. Upon information and belief, NIST funding was used to develop "Tag Sequences" by Affymetrix (now Thermo Fisher) and others (including Illumina under the direction of CEO Flatley) and this also appears to be a fraudulent use of government funds to misappropriate intellectual property developed at Cornell in the Barany Lab (where Dr. Zirvi completed his PhD Thesis).

41. Since the material is over 20 years old (being initially submitted in 1994), it is difficult to understand what would be proprietary, or suitable for a patent submission. Upon information and belief, this is further indication of both obstruction of justice and anti-trust behavior of the duopoly of Illumina and Thermo Fisher, which jointly control over 90% of the markets in DNA microarrays and DNA sequencing – it stretches the imagination that disclosure

of these 415 pages of documents would reveal trade secrets or proprietary information detrimental to these two industry leaders, unless such disclosure were to expose to the SEC, the Federal Trade Commission ("FTC"), the USPTO, the NIH, the NIST and US law enforcement agencies the substantial fraud, collusion, and irreparable harm allegedly perpetrated by the duopoly of Illumina and Thermo Fisher on Cornell and the inventors of WO97/31256.

42. Dr. Zirvi submitted supporting documentation and a timely appeal request via email to foiaappeals@doc.gov on June 30, 2018. The initial response incorrectly stated that foiaappeals@doc.gov was not the correct address to address NIST FOIA appeals, contrary to the letter sent from NIST regarding FOIA appeals.

43. Further communications regarding this appeal were ignored by NIST with no explanation or response.

44. Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), Dr. Zirvi exhausted his administrative remedies in his FOIA request to the NIST when the NIST did not respond within 20 days to the timely appeal Dr. Zirvi filed on June 30, 2018.

C. **The Document Requested by Dr. Zirvi Must be Produced Under FOIA**

45. Dr. Zirvi's FOIA requests seek information that is in the public interest, and not entitled to confidentiality, as its disclosure would shed light on Illumina's improper efforts to maintain its monopoly power in the market for DNA sequencing and arrays, including the deceptive and collusive activities of Illumina and Thermo Fisher to usurp the intellectual property of Cornell University and Dr. Zirvi.

46. As the FTC recently stated in its antitrust action seeking to stop Illumina's $1.2 billion acquisition of its competitor, Pacific Biosciences: "Illumina is a monopolist. It is the self-proclaimed leader in DNA sequencing and dominates DNA sequencing markets in the United

States and worldwide." The FTC described Illumina's dominant 90% market-share of the next-generation sequencing ("NGS") market and alleges that Illumina is seeking to acquire Pacific Biosciences to improperly maintain its monopoly control over the NGS market. (Ex. 1).

47. The FTC further describes Thermo Fisher as the second-leading provider of NGS systems, albeit well behind Illumina and details the role of intellectual property as a barrier to entry in the NGS marketplace:

> Intellectual property is a significant barrier to entry in the NGS Market. The strength of incumbent NGS companies' patent portfolios differs depending on the region. Using intellectual property, incumbent U.S. NGS suppliers (namely, Illumina) exclude other firms from selling NGS products in the United States, including some companies that supply NGS products elsewhere in the world. Accordingly, intellectual property creates a unique set of entry conditions in the United States.

(Ex. 1 at ¶ 33).

48. This present FOIA action seeks information about Illumina's historical efforts to maintain its monopoly power, including through the use of intellectual property to stifle competitors and/or collude or partner with competitors to forestall their efforts of its competitors to capture its share of the NGS market.

49. In or about 2010, Cornell University and Life Technologies, now part of Thermo Fisher, commenced the Illumina Action, alleging that its instruments, kits and services for genetic analysis infringed eight patents owned by Cornell, and licensed to Life Technologies. Illumina was seeking to develop new products, by usurping its competitor's technology, to drive its competitor out of business.

50. Unbeknownst to Cornell, during the litigation, Illumina pursued and formed a secret partnership with its competitor, Thermo Fisher, for the purpose of maintaining its monopoly power. Based on that partnership, Illumina colluded with Thermo Fisher to resolve the litigation,

for Illumina's benefit and to the detriment of Cornell, and causing harm to competition in the marketplace.  Based on that deception, Cornell was tricked into entering into a settlement agreement with Illumina, without Cornell's knowledge of the collusion between Illumina and Thermo Fisher.

51. Subsequently, it became clear to Dr. Zirvi, (an inventor of one of the key patents at issue in the Illumina Action), and Cornell that Illumina and Thermo Fisher had colluded to end the litigation.  Cornell thus filed a motion to set aside the settlement, claiming it was defrauded by "secret side deals" between Illumina and Thermo Fisher.  Unsurprisingly, given what we now know of their secret partnership, Illumina and Thermo Fisher then jointly opposed that motion and successfully moved that dispute to a confidential arbitration proceeding.

52. Consistent with the secret partnership between Illumina and Thermo Fisher, shortly after entering the Settlement Agreement, in January 2018, Illumina and Thermo Fisher publicly announced a partnership that stunned the medical community.  Their partnership involved the development of a joint product "Ampliseq for Illumina".  (Exs. 11, 12).  Thermo Fisher and Illumina released a video in which Joydeep Goswami, President of Clinical Oncology and Next Generation Sequencing (NGS) at Thermo Fisher, and Mark Van Oene, Illumina's Chief Commercial Officer, extolled the virtues and advantages of their companies' "partnership" in developing AmpliSeq. Among other things, they stated that "over several years, customers on Illumina's platforms have asked for AmpliSeq to be enabled on their instruments…"  See (https://www.youtube.com/watch?v=lWPaZX1TDa4).  (Ex. 13).  Marc N. Casper, CEO of Thermo Fisher, also announced that Ampliseq for Illumina was a growth opportunity for both companies in January 2018.

53. Immediately thereafter, Illumina's website reflected approximately 20 product

lines that directly used "AmpliSeq for Illumina" and no fewer than 49 product lines and over 250 documents and/or web pages referencing "AmpliSeq for Illumina." For example, one web page shows "AmpliSeq for Illumina" assays running on an Illumina sequencing instrument.

54. Also, in January 2018, Illumina's CEO Francis deSouza admitted that Illumina and Thermo Fisher had "started the conversation clearly well over a year ago," during the pendency of the Illumina Action and well *before* the Settlement Agreement.

55. To investigate and expose this fraud and related collusive activities, Dr. Zirvi submitted a series of FOIA requests to the NIH, USPTO, and NIST to uncover information about the Settlement Agreement, as well the larger collusion of Illumina and Thermo Fisher, and the implication for various grants and funds of government agencies such as NIH and NIST.

56. In or about August 2018, after filing the original FOIA requests, Dr. Zirvi filed the action *Zirvi et al v Flatley et al* (1:18-cv-07003-JGK) (the "Flatley Action") in the United States District Court for the Southern District of New York., alleging that Illumina submitted patent applications that appropriated Dr. Zirvi's Zip Code sequence technology.

57. Through the Flatley Action, and his own investigation, Dr. Zirvi discovered information that further demonstrates that the information that is the subject of this FOIA complaint is in the public interest and not subject to FOIA exemptions. Specifically, Dr. Zirvi has learned that Illumina and Thermo Fisher were collaborating at least as early as January 2015, while still pretending to be adversaries in the Illumina Action, over two years *prior* to the Settlement Agreement of April 2017.

58. Through this FOIA action, Dr. Zirvi and co-plaintiffs of the Flatley Action, as inventors of the patents subject to Illumina's secret side deal with Thermo Fisher, seek information that is directly related to the details of that collusion, and, therefore, not subject to any applicable

FOIA exemption. (*See* Exs. 11, 14). Illumina is falsely utilizing FOIA exemptions to conceal inculpatory evidence of its monopolistic, collusive, and fraudulent practices in an effort to obstruct justice.

59. Amongst this misconduct, Illumina has made material misrepresentations and deliberate omissions in a coordinated effort to mislead investors both at its inception and since 2015. This includes but is not limited to:

(a) Fraudulently concealing IP theft and misappropriation via redacting the First Amendment Agreement in its SEC filings shortly after its IPO and at least until 2009 (Exs. 15, 17);

(b) Concealing the contents of this document from investors and the Court in the Illumina Action (Exs. 6, 15-17;

(c) Filing fraudulent and misleading NIH grants and USPTO patent applications (Exs. 6-10, 17, 20-22);

(d) Obstructing efforts to obtain witness statements from Illumina's Mark Chee and Jian-Bing Fan in the Illumina Action;

(e) Secretly colluding with Thermo Fisher since at least January 2015 to fraudulently induce the settlement of the Illumina Action. (Exs. 14, 17);

(f) Omitting to disclose the secret "*quid pro quo*" of "Ampliseq for Illumina" (Exs. 11-13);

(g) Obstructing Justice in the Illumina Action by hiding the highly unusual FOIA requests for four of Illumina's own grant applications to the NIH by in-house counsel William Noon in 2015 from Court. (Ex. 18, 19).

60. The FOIA exemptions do not apply to actions taken in support of a crime or effort to improperly maintain monopoly power. The so-called "crime-fraud exception" removes the

protection of the attorney-client privilege for communications concerning contemplated or continuing crimes or frauds. This exception encompasses criminal and fraudulent conduct based on action as well as inaction.

61. The NIH, NIST and USPTO are agencies subject to FOIA and must therefore release in response to a FOIA request any disclosable records in their possession at the time of the request and provide a lawful reason for withholding any other materials as to which they are claiming an exemption.

62. Dr. Zirvi has exhausted all administrative remedies, having either filed administrative appeals, which were denied or ignored, or was not informed of his rights to administrative appeals. Accordingly, Dr. Zirvi is entitled to an order compelling NIH, NIST and USPTO to produce the full and unredacted documents sought by the Requests.

## **REQUEST FOR RELIEF**

WHEREFORE, Dr. Zirvi respectfully requests that this Court:

Declare that the full and unredacted documents sought by the Requests, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

Order NIH, NIST and USPTO to provide those records to Dr. Zirvi within 20 business days of the Court's order;

Award Dr. Zirvi the costs of this proceeding, including reasonable attorney's fees, as expressly permitted by FOIA; and

Grant Dr. Zirvi such other and further relief as this Court deems just and Proper, including a stay on any destruction of documentary evidence including but not limited to email and other communications between the NIH, NIST and/or USPTO and Illumina and/or Thermo Fisher involving the requested records.

RESPECTFULLY SUBMITTED this 23rd day of June, 2020.

    /s/ Jason C. Spiro
Jason C. Spiro
SPIRO HARRISON
830 Morris Turnpike, Second Floor
Short Hills, NJ 07078
(973) 232-0881
jspiro@spiroharrison.com
Attorneys for Plaintiff