NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MONIB ZIRVI, M.D., PH. D,

*Plaintiff*,

v.

UNITED STATES NATIONAL
INSTITUTES OF HEALTH, *et al.*,

*Defendants*.

Civ. No. 20-7648

**OPINION**

**QURAISHI, District Judge**

**Introduction**

This matter comes before the Court upon cross-motions for summary judgment. The United States Patent and Trademark Office ("USPTO"), the National Institutes of Health ("NIH"), the National Cancer Institute ("NCI"), the National Institute of Standards and Technology ("NIST"), and the National Human Genome Research Institute ("NHGRI") (collectively, the "Agency Defendants") filed a Motion for Summary Judgment ("Agency Defs.' Br.", ECF No. 32-1.) Intervenor Defendant Illumina, Inc., ("Illumina") also filed a Motion for Summary Judgment. ("Illumina Br.", ECF No. 31-1.) Dr. Monib Zirvi ("Plaintiff") opposed and filed a Cross-Motion for Summary Judgment. ("Pl.'s Br.", ECF No. 37-1.) Illumina filed a reply. ("Illumina Reply", ECF No. 38.) The Agency Defendants also filed an opposition. ("Agency Defs.' Reply, ECF No. 39.) The Court has decided the motions based upon the written submissions of the parties and

1

without oral argument, pursuant to Local Civil Rule 78.1(b).  For the reasons stated herein, the Court grants Defendants' motions and denies Plaintiff's motion.

## Background

The following facts are uncontested unless otherwise noted.  Plaintiff is a scientist and medical specialist.  (*See* Compl., ECF No. 1.) Defendant Illumina is a biotechnology company. (*Id.* ¶ 9.) Plaintiff believes that Illumina is a "monopolist" in the DNA array market.  (*Id.* ¶¶ 9–10.)  DNA arrays are tools that can detect changes in DNA.  (*Id.*)  Plaintiff seeks documents from the Agency Defendants concerning "efforts by Illumina to improperly maintain its monopoly power."  (*Id.* ¶ 10.)

**I.      The FOIA Requests**

Between 2017 and 2019, Plaintiff submitted a series of Freedom of Information Act ("FOIA") requests.[1]  (Illumina Statement of Undisputed Material Fact ("SUMF") ¶ 1, ECF No. 31-2.)  Relevant here, Plaintiff requested documents from the NCI, the NHGRI, the USPTO, and the NIST.  (*Id.*)  In response, the Agency Defendants produced documents with certain information redacted or omitted.  (*Id.* ¶ 2.)  In this lawsuit, Plaintiff challenges those redactions and omissions.

   A.     *The NCI Request*

On May 17, 2017, Plaintiff filed a FOIA request with the NCI, seeking certain Illumina grant applications and progress reports.  (*Id.* ¶ 3.)  On June 14, 2017, the NCI produced 187 pages of responsive material.  (*Id.* ¶ 4.)  The NCI informed Plaintiff that it redacted in part 53 pages and withheld seven pages pursuant to FOIA Exemption (b)(4). (Agency Defs.' SUMF ¶¶ 30–31.)  The

---

[1] NHGRI and NCI are components of Defendant National Institutes of Health ("NIH").  (Agency Defs.' Br. at 1.)  Plaintiff also submitted a FOIA request directly to NIH. The NIH request is not at issue in this motion.  (*See* ECF No. 30.)

NCI consulted with Illumina prior to making this exemption determination. (*Id.* ¶ 28.) NCI's response to Plaintiff indicated that the enclosed materials were NCI's final response to the May 17 FOIA request and informed Plaintiff that he had ninety (90) days to appeal that decision. (Illumina SUMF ¶¶ 5–6.) Illumina later determined that NCI could release additional materials that were excluded during the June 2017 FOIA response. (Agency Defs.' SUMF ¶¶ 32–34.)

Plaintiff now objects to seven redactions in NCI Grant Application No. 2R44CA 103406-02 (the "NCI Grant Application"). (*See* Agency Defs.' Ltr. at 1, ECF No. 30.) Illumina contends that the challenged sections in the NCI Grant reveal technical details about Illumina's "assay development and optimization process and proprietary information about array design features." (Illumina SUMF ¶ 8.) Illumina states that (1) this information has not been publicly released; (2) the NCI promised to treat the grant application as confidential information, and (3) Illumina marked the NCI Grant Application as "Confidential." (*Id*. ¶¶ 8-10.)

B.  *The NHGRI Request*

On May 17, 2017 Plaintiff submitted a FOIA request to NHGRI, which, like NCI, is an institute in the NIH. (*Id.* ¶ 11.) The request sought Illumina grant applications and progress reports that were submitted to the NHGRI. (*Id*.) In response, NHGRI released two partially redacted records: (1) Grant No. 1U54HG002753-01 (the "NHGRI Grant Application") and (2) Progress Report 5U54HG002753-02. (*Id*. ¶ 12.) NHGRI redacted the information based in part on FOIA Exemption (b)(4). (Agency Defs.' SUMF ¶ 53.) NHGRI consulted with Illumina prior to making the exemption determination. (*Id*. ¶ 50.) Illumina determined that some of the previously exempted materials could be released during this litigation. (*Id*. ¶ 52.)

Plaintiff challenges three redactions in the NHGRI Grant Application. (*See* Agency Defs.' Ltr. at 2.) Illumina claims that the challenged sections reveal "details about Illumina's

3

optimization and control process," which are not public information. (Illumina SUMF ¶ 14.) Illumina states that it shared the NHGRI Grant Application with the NHGRI under the assurance that the application would be treated as confidential information. (*Id.* ¶ 15.) Moreover, Illumina marked the document as "Confidential." (*Id.* ¶ 15.)

    C.    *The USPTO Request*

On May 23, 2018, Plaintiff submitted a FOIA request to the USPTO. (*Id*. ¶ 17.) Plaintiff sought documents filed during an *inter partes* review ("IPR") proceeding before the Patent and Trademark Appeals Board ("PTAB"). (*Id*.) That IPR stemmed from a dispute between Cornell University and Illumina. (*Id.* ¶ 19.) Plaintiff specifically requested PTAB Exhibit 2052, which is a settlement agreement between Cornell, Thermo Fischer Scientific, and Illumina ("the Settlement Agreement" or "Exhibit 2052"). (*Id.*) After the PTAB entered judgment terminating the IPR proceeding, the PTAB granted the parties' request to keep the Settlement Agreement confidential. (Agency Defs.' SUMF ¶ 9.)

The USPTO withheld Exhibit 2052 in full pursuant to "Exemptions (b)(4) and (b)(5) of the FOIA." (Ex. B to Boston Decl., ECF No. 32-4.) Plaintiff appealed that decision. (Agency Defs.' SUMF ¶ 5.) The USPTO denied the appeal and affirmed the application of Exemption (b)(4). (*Id*.) The USPTO determined that the Settlement Agreement is confidential information, and that its disclosure would discourage parties before the PTAB from settling. (*Id*. ¶ 14.)

    D.    *The NIST Request*

On May 10, 2018, Plaintiff submitted a FOIA request to the NIST. (*Id*. ¶ 15.) NIST is a component of the Department of Commerce. (*Id*.) Plaintiff's FOIA request sought a 1994 grant application filed as part of NIST's Advanced Technology Program ("ATP"). (*Id*. ¶ 16.) NIST awarded that 1994 grant jointly to two companies—Affymetrix and Molecular Dynamics. (Pl.'s

4

SUMF ¶ 8, ECF No. 37-2.) Thermo Fisher later acquired Affymetrix and Jay Flately, then-CEO of Molecular Dynamics, later became CEO of Illumina. (*Id*.) In response, NIST informed Plaintiff that it had located twenty-two unique responsive records. (Agency Defs.' SUMF ¶ 18.) However, NIST determined that FOIA Exemption (b)(3) prohibited disclosure because the ATP statute in effect at the time barred disclosure. (*Id*.) Plaintiff appealed NIST's decision to the Department of Commerce. (*Id*. ¶ 19.) Upon review, DOC denied Plaintiff's appeal and found that FOIA Exemption (b)(4) applied to all twenty-three documents. (*Id*.)

**II.     Procedural Background**

Plaintiff brought this lawsuit on June 23, 2020. (ECF No. 1.) Plaintiff sought full disclosure from Agency Defendants of any documents "reflecting or concerning" Illumina's allegedly anti-competitive activities, including any partnership agreements between Illumina and Thermo Fisher. (Compl. ¶ 10.) The Agency Defendants answered on August 24, 2020. (ECF No. 11.) Illumina intervened to support the NCI, NHGRI, and USPTO's FOIA responses on September 1, 2020. (ECF No. 12.) After the Agency Defendants released additional documents during discovery, Plaintiff agreed to limit his challenges to four specific requests:

1. The NCI's decision to redact information on pages 25, 31, 32, 35, 37, and 38 of the NCI Grant Application, as well as NCI's withholding of a referenced appendix;

2. The NHGRI's decision to redact information on pages 24, 25, 27, and 28 of the NHGRI Grant Application;

3. The USPTO's decision to withhold in full Exhibit 2052 from the IPR proceeding;

4. The NIST's decision to withhold in full twenty-two documents (the "MIND Development" grant proposal; a Final Technical Report for February 1, 1995 – January 31, 2000; a 1996 Annual Technical Report; and Quarterly Technical Reports for nineteen quarters from February 1, 1995 through September 30, 1999;

(Collectively, "the Disputed Documents"). (*See* Agency Defs.' Ltr.)

Illumina and the Agency Defendants filed the present summary judgment motions on February 1, 2021. (ECF Nos. 31, 32.) Plaintiff responded with an opposition and cross-motion for summary judgment on March 11, 2021. (ECF No. 37.) Plaintiff requests summary judgment in his favor, or in the alternative, that the Court authorize Plaintiff to conduct additional limited discovery or examine the Disputed Documents *in camera*. (Pl's. Mot. at 16.) Plaintiff also argues that he is entitled to payment for his fees and costs associated with this litigation. (*Id*. at 32.) Defendants replied on March 29, 2021. (ECF Nos. 38, 39.)

## Legal Standard

### III. The FOIA Statutory Scheme

Plaintiff brings this lawsuit under FOIA. 5 U.S.C. § 552. Public access to government documents is the "fundamental principle" that animates FOIA. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989). "Congress recognized, however, that public disclosure is not always in the public interest." *C.I.A. v. Sims*, 471 U.S. 159, 167 (1985). Rather, FOIA "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat.'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003).

To that end, FOIA mandates prompt disclosure of government records unless the requested information falls within one of nine enumerated exemptions. *Id. See also* 5 U.S.C. § 552(b). If the requestor believes that an agency has improperly withheld documents or information—and all administrative remedies have been exhausted—the requestor may bring an action in federal district court seeking *de novo* review of the agency's decision. *See* 5 U.S.C. § 552(a)(4)(B); *McDonnell v. United States*, 4 F.3d 1227, 1241 (3d Cir. 1993).

Summary judgment is typically used to adjudicate FOIA cases. *Manna v. U.S. Dep't of Justice*, 832 F. Supp. 866, 870 (D.N.J. 1993), *aff'd*, 51 F.3d 1158 (3d Cir. 1995). Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Under FOIA, the government bears the burden of proof. *Manna*, 832 F. Supp. at 870. To meet that burden, an agency may submit affidavits describing the information withheld and explaining why the information falls within one or more of FOIA's exemptions. *Id.* "[A] district court may award summary judgment on the basis of agency affidavits alone where the affidavits are sufficiently detailed and are submitted in good faith." *Manna*, 832 F. Supp. at 870. Agency affidavits are generally "accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Venkataram v. Office of Information Policy*, 2013 WL 3871730, at *3 (D.N.J. July 25, 2013) (citing *Negley v. FBI*, 169 F. App'x 591, 594 (D.C. Cir. 2006)).

**Discussion**

First, the Court will analyze each FOIA request to determine whether the Agency Defendants properly withheld or redacted the Disputed Documents. Next, the Court will address Plaintiff's argument that a "crime-fraud" exception applies to Exemption 4 and warrants additional discovery or *in camera* review of the Disputed Documents. (Pls.' Mot. at 15–16.) Finally, the Court will address Plaintiff's request for fees and costs associated with this litigation. (*Id*. at 32.)

**IV.     The FOIA Requests**

The Agency Defendants withheld or redacted the Disputed Documents based on 5 U.S.C. § 552(b)(4) ("Exemption 4"). "Exemption 4 protects privileged or confidential information supplied to an agency by third parties that contains commercial or financial information, or trade secrets." *Cozen O'Connor v. U.S. Dep't of Treasury*, 570 F. Supp. 2d 749, 776 (E.D. Pa. 2008). To rely on Exemption 4, the agency must establish the withheld information is "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). The terms of Exemption 4 are given their ordinary meanings. *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019).

Information is "commercial" under Exemption 4 "if, in and of itself, it serves a commercial function or is of a commercial nature." *Nat'l Ass'n of Homebuilders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2006) (citing *Am. Airlines, Inc. v. Nat'l Mediation Bd.*, 588 F.2d 863, 870 (2d Cir. 1978)) (internal quotations omitted). "Exemption 4 is *not* confined only to records that 'reveal basic commercial operations . . . or relate to the income-producing aspects of a business.'" *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 319 (D.C. Cir. 2006) (quoting *Pub. Citizen*

*Health*, 704 F.2d at 1290) (emphasis in original).  Rather, "the exemption reaches more broadly and applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency." *Id*. (citing *Nat'l Ass'n of Homebuilders*, F.3d 26 at 38–39.")  "A company may have a commercial stake in requested information when its disclosure would cause commercial consequences." *Besson v. United States Dep't of Com.*, 2020 WL 4500894, at * 113 (D.D.C. Aug. 5, 2020) (collecting cases).

Information "obtained from a person" under Exemption 4 includes information obtained from an "individual, partnership, corporation, association, or public or private organization other than an agency." *See Flightsafety Servs. Corp. v. Dep't of Lab.*, 326 F.3d 607, 611 (5th Cir. 2003) (citing 5 U.S.C. § 551(2)).

Finally, information is "confidential" under Exemption 4 "at least where commercial or financial information" is (1) "customarily and actually treated as private by its owner" and (2) "provided to the government under an assurance of privacy." *Food Mktg. Inst.*, 139 S. Ct. at 2366. The first condition—that the information owner treat the information as private—is mandatory. *Id*. at 2363.  It is an open question as to whether a government promise of privacy is also required. *Id*.  To determine whether the information is "customarily" or "actually" treated as private, courts consider the practices of the information owner.  Relevant factors include (1) whether the information owner internally restricts access to the records to certain personnel; (2) whether restrictive markings are applied to the documents; (3) whether the information is protected using secure information technology systems or password protection; and (4) whether the information owner requires confidentiality agreements to access the information. *See Am. Small Bus. League v. United States Dep't of Def.*, 411 F. Supp. 3d 824, 831 (N.D. Cal. 2019).

After reviewing the summary judgment record, the Court finds that each Agency Defendant

properly invoked Exemption 4 as to each FOIA request at issue in this case. The Agency Defendants provided sufficiently detailed affidavits in each case to support the claimed exemptions. *Manna*, 832 F. Supp. at 870. The Court accords these affidavits the presumption of good faith. *Venkataram*, 2013 WL 3871730 at *3.

    A.    *The NCI Request*

The Agency Defendants met their burden to show that Exemption 4 applies to the documents redacted or withheld from the NCI's FOIA response. First, the Agency Defendants provided sufficiently detailed affidavits that show that the disputed information was commercial in nature. (*See* Agency Defs.' Mot. at 15.). For example, NCI's FOIA coordinator avers that the contested records here consist of Illumina's research plan and development process for Illumina's "methylation BeadArray products." (Milliard Decl. ¶ 19, ECF No. 32-7.) That information included manufacturing, optimization, and design criteria. (*Id.*) Illumina has a "commercial interest" in its own manufacturing and design process. *Nat'l Ass'n of Homebuilders*, F.3d 26 at 38–39. Second, it is undisputed that NCI received this information from Illumina—satisfying the "obtained from a person" requirement under Exemption 4. (Pl.'s SUMF ¶ 11.) Third, the Agency Defendants established that the contested records were "confidential." Illumina treated the documents as private when it marked the documents as "confidential" and required confidentiality agreements before sharing the documents. (Milliard Decl. ¶¶ 19–20.) Moreover, the NCI Grants Policy in effect at the time assured grant submitters like Illumina that such information would be kept confidential. (*Id.*) Thus, the contested records satisfy both definitions of "confidential" described in *Food Marketing*, 139 S. Ct. at 2366.

In sum, the Agency Defendants properly invoked Exemption 4 regarding the NCI FOIA request because the disputed information was commercial in nature, obtained from a person, and

confidential. Additionally, Illumina argues that Plaintiff's claims against the NCI are defective because Plaintiff failed to exhaust his administrative remedies. (Illumina Mot. at 12–14.) Plaintiff concedes that he failed to appeal the NCI FOIA determination. (Pl.'s Br. at 13.) However, Plaintiff argues this failure to appeal should be excused because NCI did not inform Plaintiff that he could appeal the NCI's decision to classify him as a "commercial-use requestor." (Pl.'s Br. at 12.)

The Court disagrees. Under the FOIA, "in the case of an adverse determination," the agency must notify the requester of: (1) "the right of such person to appeal to the head of the agency, within a period determined by the head of the agency that is not less than 90 days after the date of such adverse determination;" and (2) "the right of such person to seek dispute resolution services from the FOIA Public Liaison of the agency or the Office of Government Information Services." *Stanco v. Internal Revenue Serv.*, 2020 WL 5107623, at *6 (E.D. Cal. Aug. 31, 2020) (quoting 5 U.S.C. § 552(a)(6)(A)(i)(III)). Here, the NCI's final response letter on June 14, 2017, met each of those criteria. (NCI Ex. 4, ECF No. 32-8.) Thus, Plaintiff's failure to appeal the NCI FOIA response prior to filing this case in federal court also warrants summary judgment in favor of Defendants. *McDonnell*, 4 F.3d at 1241.

B.   *The NHGRI Request*

Exemption 4 also applies to the documents redacted or withheld from the NHGRI's FOIA response. NHGRI officials aver that the disputed records are "commercial" because Illumina still uses the technical information in its products today. (Manheim Decl. ¶ 19, ECF No. 32-9.) As with the NCI request, it is undisputed that the NHGRI obtained the information at issue here from Illumina. (*Id*.) And finally, the affidavits show that Illumina treated the redacted information as private and provided it to the government under assurances of confidentiality. (*Id*. ¶ 20.) Based on unredacted portions of the grant, Plaintiff argues that the information at issue is too old to be

11

justifiably considered exempt under Exemption 4. (Pls. Mot. at 24 – 25.). However, NHGRI's officials claim otherwise and Plaintiff's "speculation" about the age of the information is not sufficient to overcome the presumption of good faith accorded to agency affidavits. *Venkataram*, 2013 WL 3871730 at *3.

      C.     *The USPTO Request*

Likewise, the USPTO properly determined that Exhibit 2052—the Settlement Agreement—falls under Exemption 4. First, the USPTO obtained the Settlement Agreement from the parties to the settlement—Illumina, Cornell, and Thermo Fisher Scientific. (Boston Decl. ¶ 17, ECF No. 32-3.) These corporations qualify as "person[s]" under Exemption 4. *See* 5 U.S.C. § 551(2). Second, the information is "commercial" or "financial" because the Settlement Agreement concerns transactional valuation information that could be held against the parties in future litigation. According to Illumina, the Settlement Agreement includes "(1) the scope of the releases, licenses and covenants granted under the agreement; (2) the parties' confidentiality obligations; (3) the terms under which the licenses, covenants and other obligations granted under the agreement may be transferred to other parties; (4) the term of the agreement; and (5) the allocation of expenses among the parties." (McCourt Decl. ¶ 40, ECF No. 31-3.) The parties have a commercial or financial interest in this content and its disclosure would impair that interest. *See Besson*, 2020 WL 4500894, at *113.

Finally, the information is confidential. The parties treated the Settlement Agreement as confidential. (Shapiro Decl. ¶ 4, ECF No. 32-11; McCourt Decl. ¶ 29.) The parties also requested that the PTAB classify this information as "business confidential," (Boston Decl. ¶ 17.) The PTAB granted that request and provided an assurance of confidentiality. (*Id.*). Such assurances encourage prompt settlement of matters before the PTAB, and settlement agreements are

customarily kept private in PTAB cases. (*Id*.) Thus, Exemption 4 applies.[2]

        D.    *The NIST Request*

Finally, Exemption 4 applies to the documents redacted or withheld from the NIST's FOIA response. NIST obtained the information at issue here from "person[s]"—Affymetrix and Molecular Dynamics. (Pls.' SUMF ¶ 8.) The Department of Commerce avers that the withheld records consist of "detailed financial and technical data" regarding private companies' "research and development activities and strategies for potentially valuable commercial technology." (Dietrick Decl. ¶ 13, ECF No. 32-5.) Lastly, the companies provided the information to NIST under an express promise of confidentiality. (*Id*. ¶ 15.) Moreover, Affymetrix asserts that it has taken "strict measure to avoid any disclosure to unauthorized third parties." (Shapero Decl. ¶ 4.) Plaintiff argues that the information is not confidential, because some information contained in the grant proposal has been used in other public filings. (Pl.'s Br. at 21.) However, NIST and Affymetrix assert that the specific data at issue here has not been made public. (Dietrick Decl. ¶ 15.) *See also Seife v. Food & Drug Admin.*, 492 F. Supp. 3d 269, 277 (S.D.N.Y. 2020) (finding information confidential because an agency avers the disputed information was kept private). In sum, the Court accords the presumption of good faith to the Agency Defendants' assertions and finds that Exemption 4 applies here. *Venkataram*, 2013 WL 3871730 at *3.

## V.     The Crime-Fraud Exception and FOIA

---

[2] Illumina and the Agency Defendants also argue that FOIA Exemption 3 applies to the USPTO Request. (Illumina Mot. at 30.) Exemption 3 excludes information protected by another statute. 5 U.S.C. § 552(b)(3). Plaintiff did not respond to this argument in his cross-motion. The Court need not decide whether Exemption 3 applies here because Exemption 4 covers the Settlement Agreement.

As noted above, the Agency Defendants met their burden to show that the Disputed Documents fall under FOIA Exemption 4.  Plaintiff's cross-motion largely ignores the relevant standards under 5 U.S.C. § 552(b)(4) and subsequent caselaw.  Instead, Plaintiff urges the Court to apply a "crime-fraud" exception to the assertion of FOIA exemptions.  (Pl.'s Br. at 15.).  Plaintiff's theory is that Congress did not intend Exemption 4 to shield documents that show the existence of a crime or a fraud.  (*Id*. at 16.)  Plaintiff asserts that the public scrutiny interests inherent in FOIA require disclosure of such documents.  (*Id*. at 18.)  Based on Plaintiff's belief that the requested documents are evidence of Illumina's anti-competitive acts, Plaintiff requests that the Court compel disclosure, allow additional discovery, or perform *in camera* review of the Disputed Documents.  (*Id.* at 16.)

The Court declines to apply a "crime-fraud" exception here.  "[O]nce the district court concludes that the agency has established the applicability of the exemption, its inquiry is at an end; the proponent of disclosure is not free to 'bolster the case for disclosure by claiming an additional public benefit.'" *Skybridge Spectrum Found. v. F.C.C.*, 842 F. Supp. 2d 65, 82 (D.D.C. 2012) (quoting *Pub. Citizen Health*, 185 F.3d at 904).  "In other words, Exemption 4 embodies a congressional determination that the public disclosure of confidential commercial information does outweigh the public interest in disclosure, and it is not the district court's role to second-guess that judgment on a case-by-case basis." *Id*.  Moreover, as Plaintiff notes in his brief, "there is not an abundance of case law on how the crime-fraud exception applies to FOIA exemptions."  (Pl.'s Br. at 15.)  To the contrary, another district court considering a comparable argument found Plaintiff's interpretation "legally unsupported" and "completely unworkable because it would effectively require agencies, and later the courts, to test the truth and accuracy of each discrete item of information covered by a plaintiff's request before applying the protections afforded by

14

Exemption 4." *Skybridge*, 842 F. Supp. 2d at 82–83.

Thus, because the Agency Defendants have met their burden and no crime-fraud exception applies in this case, the Court declines to order additional discovery or *in camera* review of the Disputed Documents. Additional discovery is not necessary here because the Agency Defendants have met their burden and submitted detailed affidavits to support their invocation of Exemption 4. *Manna*, 832 F. Supp. at 870. FOIA does allow *in camera* review of documents. 5 U.S.C. § 552(a)(4)(B). However, such review is disfavored and should only be undertaken when agency affidavits are insufficient. *Berger v. I.R.S.*, 487 F. Supp. 2d 482, 494 (D.N.J. 2007), *aff'd*, 288 F. App'x 829 (3d Cir. 2008) (quotations omitted). As discussed above, the affidavits here are sufficient to merit summary judgment in favor of Defendants.

## VI. Costs

Finally, Plaintiff argues that "irrespective of the outcome of the parties' cross-motions for summary judgment, [P]laintiff is entitled to recover his costs from the litigation in this matter." (Pl.'s Br. at 32.) Plaintiff argues that because this litigation spurred NCI and NHGRI to release additional documents, he is entitled to costs. (*Id.*)

The Freedom of Information Act provides: "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). It is "well established that a plaintiff can recover attorney fees only if 1) he is eligible, and 2) he is entitled to such an award." *McDonnell v. United States*, 870 F. Supp. 576, 580 (D.N.J. 1994)

To be considered eligible for attorney fees, a plaintiff must have substantially prevailed in his action. 5 U.S.C. § 552(a)(4)(E). A complainant has "substantially prevailed" if the

complainant has obtained relief through either (1) "a judicial order" or (2) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id*.

If the plaintiff has established his eligibility, the court then has discretion as to whether to award fees. *McDonnell*, 870 F. Supp. at 580. Courts primarily consider four factors in making this "entitlement" determination: (1) public benefit resulting from the disclosure; (2) commercial benefit to plaintiff resulting from the disclosure; (3) the nature of plaintiff's interest in the records disclosed; and (4) whether the government had a reasonable basis in law for withholding the records. *Id*. *See also Nat'l Sec. Couns. v. Cent. Intel. Agency*, 811 F.3d 22, 28 (D.C. Cir. 2016).

The Court finds that Plaintiff is neither eligible for nor entitled to costs here. Plaintiff's interest in his FOIA requests is personal and does not implicate matters of public concern. Courts have found plaintiffs ineligible where the plaintiff's interest in the requested information is purely personal. *Van Chase v. Bureau of Indian Affs.*, 2020 WL 3489469, at *4 (D.D.C. June 26, 2020) (finding personal FOIA requests "insubstantial" under § 552(a)(4)(E)); *Dasta v. Lappin*, 657 F. Supp. 2d 29, 33 (D.D.C. 2009) (same). For the same reason, even if the Court assumed that Plaintiff "substantially prevailed," the discretionary entitlement factors counsel against awarding fees. Here, there is little public benefit from disclosure; Plaintiff sought commercial benefits from the disclosure; and the government had a reasonable basis for withholding the records. This is not a case where the public at large will benefit from the released information. *Cf. McDonnell*, 870 F. Supp. at 580 (collecting cases). Nor is this a case that will clarify legal principles for future FOIA cases. *Id*. Thus, based on lack of either eligibility or entitlement, the Court denies Plaintiff's request for fees.

## Conclusion

For the foregoing reasons, the Court grants summary judgment in favor of Defendants and denies Plaintiff's Cross-Motion for Summary Judgment. An appropriate order follows.

Date: April 28, 2022

                                                                      ZAHID N. QURAISHI
                                                                      UNITED STATES DISTRICT JUDGE